FILOMENA GONZÁLEZ WIDOW OF HERNÁNDEZ, Plaintiff and Appellant, *v.* JUAN PÉREZ COLÓN, Defendant and Appellee.

No. CE-66-45.     Decided June 15, 1967.

*Rodríguez Ema & Rodríguez Ramón, Rodolfo Zequeira,* and *Nicolás Giménez* for appellant. *Miguel Franquiz Ventura* and *Eduardo A. Ruiz* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

A property having been leased on March 20, 1964 for a monthly rent of $250, may the Economic Stabilization Administration, after the tenant vacated it in March 1965, fix a rent of $140.15 a month retroactive to June 19, 1964? That is the question to be determined in this appeal.

Both, the Administrator of the said government agency as well as the trial court, contrary to the view expressed by

the Secretary of Justice in his opinion of August 6, 1965, and notwithstanding the provisions of § 4(b)(4) of the Reasonable Rents Act, 17 L.P.R.A. § 184(b)(4), have maintained the proposed rent of $140.15 a month retroactive to June 19, 1964 "without prejudice that . . . the corresponding evidence be presented as to the fact that it was a boardinghouse," because the Administrator is "The only authority empowered to fix rentals"; that "The allegation that this was a boardinghouse is a matter which needs to be proved since the tenant denies it"; "That amendment [the aforesaid § 4(b)(4) of the Act in question] does not alter the remedial legislative purpose of protecting the tenant . . . therefore, then . . . the regulation . . . [adopted as] a consequence of the amendment in question subsists."

The provision in question exempts the rental unit in this case from the control prescribed by the Reasonable Rents Act since said provision operates as a matter of law. We explain ourselves below.

### Summary of the Case

The case involves a property in which appellant lived until March 20, 1964, on which date she leased it to Mr. Reyes Gómez for the purposes of a boardinghouse, a fact denied by the tenant, but which was not proved, according to the order rendered by the Administrator. The rental agreed upon was $250 a month which was paid by Reyes Gómez until he vacated the property in March 1965. On September 16, 1965 said tenant filed a complaint before the Economic Stabilization Administration, alleging that the rental collected from him was unreasonable. At the hearing set for January 17, 1966, at which the tenant did not appear, appellant requested that her jurisdictional contention based on the applicability of § 4(b)(4) of the Reasonable Rents Act be decided in the first place. For those purposes the Examiner

Officer of the Administration approved the following stipulation:

"1. that on March 20, 1964 the landlady leased to the tenant the rental unit object of this proceeding by the contract identified and accepted in evidence as Exhibit 1 of the landlady;

"2. that the Administration intends to fix to this rental unit a lease rental for dwelling on the basis of the comparable standard, since no maximum rent has been fixed for it, and

"3. that at the time of the lease contract in question the leased property did not appear registered in the Administration because it was not in the rental market, since the landlady used it for many years prior thereto as her residence."

It is alleged that the trial court committed error in not applying § 4(b)(4) of the Reasonable Rents Act (17 L.P.R.A. § 184(b)(4)) which provides that:

"The provisions . . . of this title shall not apply to the following properties: . . . (4) To any rental unit with a monthly rent of $200.00 or more when same is used as dwelling, and with a monthly rent of $400.00 or more when used for business, industry, professional offices, or for social and recreation purposes, . . . ."

*Other Applicable Provisions of Law and Regulations*

At the time the property in question was leased § 5(b) of the Rent Regulation, effective since January 12, 1959, was in force, which in its pertinent part reads as follows:

"In the case of rental units constructed before Oct. 1, 1942 which had not been rented on said date, the maximum rent *shall be the first rent charged after Oct. 1, 1942,* if same has not been further reviewed by the Federal Rent Office, or by the Administrator; provided that in case that no revision has been made by either one of the above mentioned agencies, the Administrator may review same under the basis of the rents generally prevailing in Puerto Rico for similar dwelling or commercial premises during the year ending October 1, 1942." (Italics ours.)

At that time § 6 of the Act in question (17 L.P.R.A. § 186) was also in force, which provided, insofar as pertinent, that:

"In cases where the Administrator adjusts the rent which was being paid prior to the date of the taking effect of this Act or issues a final order on any rent, fixing in lieu thereof the reasonable rent as herein determined, the tenant shall be required to pay only the basic rent or the reasonable rent fixed for the purpose, but he shall not be entitled to any reimbursement or claim for the payment made in excess of the reasonable rent prior to the date on which the latter may be fixed, except in those cases where by express provision of this Act the rent automatically adjusts to the amount prevailing on October 1, 1942, and except in such cases where the Administrator issues a temporary order increasing or fixing the maximum rent until the case is finally decided; Provided, That the rent so increased or fixed shall be subject to reimbursement to the tenant as to the amount in excess of the maximum rent that may be fixed by the final order."

When the property in this case was for rent, it should have been registered in the Economic Stabilization Administration pursuant to the provisions of § 9 of the Reasonable Rents Act (17 L.P.R.A. § 189), and for failure to do so, the landlord was subject to the penalties prescribed in § 19 of said Act (17 L.P.R.A. § 210).

Act No. 67 of June 19, 1964 and Act No. 98 of June 26, 1965 amended § 6 of the Reasonable Rents Act. By virtue thereof subsection (d) of said Act provides that: (17 L.P.R.A. § 186—Supp. 1966.)

"If the rental property had not been rented on October 1, 1942, the Administrator shall fix the rent on the basis of the rents prevailing at the time of the determination for properties of similar rent located in comparable zones that were rented on October 1, 1942. Until the Administrator shall fix the corresponding rent, the maximum rent for the property shall be the first one charged. This provision does not apply to lots when the building belongs to a landlord who is not the owner of the

lot. In this case the rent of the lot shall be determined as provided in the following subsection (g) (2)."

Subsection (j) (1) of said § 6 thus amended provides that the Administrator's determination increasing or reducing the rent of a rental property shall be with a retroactive character:

"When the landlord has not complied with the requisite of registration within the term of thirty (30) days granted by this Act, if the rent agreed upon is higher than the one fixed by the Administrator. In this case the refund shall be retroactive to the date on which the tenant occupied the rental property. No refund for late registration shall be made retroactive to a date prior to the effectiveness of this amendment to the law."

On December 15, 1964, the Administrator promulgated a new Rent Regulation which in its § 186–27 (4) provides that said Regulation does not apply:

"To all rental units with a rent of $200 or more per month, when the same are used for dwelling purposes, and with a rent of $400 or more per month, when used for commercial, industrial, professional, social or recreation purposes. This exemption does not cover lots. In those cases where the rents charged for dwelling and commercial unit are $200 or more per month, or $400 or more per month, respectively, a study will be made by the Administration, in order to determine if such units fall within the scope of the [Administration], or are exempt from same. Should it be determined that the unit falls within the scope of [the provisions of the Reasonable Rents Act], the Administrator shall request the registration statement from the landlord, allowing him a period of 15 days to submit same."

### Decision

There is no doubt that we are not confronted with a case of automatic adjustment nor with one involving a temporary order fixing the rental. *Sanfiorenzo* v. *Peñagarícano, Adm'r*, 90 P.R.R. 703 (1964) ; *Peñagarícano* v. *Superior Ct.*, 81 P.R.R. 849 (1960). However, the Administrator is em-

powered to fix a rent with retroactive effect as of June 19, 1964 which is the effective date of Act No. 67 pursuant to subsection (j) (1) of § 6 of the Reasonable Rents Act, as amended for that purpose by Act No. 67. Therefore the Administrator's decision in this case is correct unless the rental unit in this case is exempt from the control established by said Act by virtue of the provisions of § 4 (b) (4) thereof without the need, for the purposes of such exemption, of any determination by the Administrator as the latter sees it and it was thus provided in the above-cited § 186–27 of his Regulation.

■ We agree with the conclusion of the Secretary of Justice in his opinion of August 6, 1965, addressed to the Administrator of Economic Stabilization to the effect that the exemption provided in § 4 (b) (4) of the Reasonable Rents Act operates as a matter of law and covers any rental unit with a monthly rent of $200 or more when the same is used as dwelling irrespective of the date on which the lease contract was entered into.

■ Section 4 of the Reasonable Rents Act expressly provides that said Act (a) applies to any rental property, that is to say, to any building, room, apartment or any part thereof, regardless of its use and lots devoted to any purposes, and (b) *does not apply* to government properties, property devoted to the business of hospital and/or clinic as regards the relationship between the person who operates said hospital or clinic business and the patients, hotels and boardinghouses, and *to any rental unit*, that is to say, each one of the dwellings, or each one of the premises rented separately in the same building, *with a monthly rent of $200 or more when the same is used as dwelling*, and with a monthly rent of $400 or more when used for business, industry, professional offices, or for social and recreation purposes. (17 L.P.R.A. §§ 184 and 212, subsections (f) and

(m).) It is only with respect to nonexempt property, that the Administrator may exercise the powers to fix basic rent, prescribe increases or reductions in the basic rent, and among other powers, to ascertain that the said Act is complied with and that its purposes are carried out. As to exempt property, once it is established that the requisites of exemption fixed by the Act are complied with, the Administrator lacks power to regulate it or in any other manner to intervene with its use and enjoyment; and much less to go beyond the provisions of the Act and to seek, in the case of dwellings with a monthly rent of $200, to make his own studies in order to determine whether or not they fall within his jurisdiction. Once the Legislature has determined to exempt the dwelling with such rent, the only thing which the Administrator may do is to ascertain that the property is used as a dwelling and that in effect the rent agreed upon is $200 or more a month. Henceforth, he cannot fix a lower rent on the ground of certain standards and views of his office adopted under the provisions of law applicable to rental units still subject to the control of the Reasonable Rents Act. *Gross* v. *United States*, 201 F.2d 780 (9th Cir. 1953); *Bray* v. *Peck*, 190 F.2d 998 (9th Cir. 1951); *Woods* v. *Benson Hotel Corporation*, 177 F.2d 543 (8th Cir. 1949); *Mitchell* v. *McDavid*, 116 N.E.2d 757 (Ct. A. Ohio 1953); *Grosz* v. *Conser*, 45 N.W.2d 734 (S.D. 1951). We conclude, therefore, that the exempting provision of § 4 of the Act operates as a matter of law once it is determined that the rental unit complies with the requirements of exemption. The fact that said unit would have been subject to the control of the Administrator prior to June 19, 1964, effective date of the exempting provision, in no way alters the result inasmuch as the Administrator did not take any action as to the same prior to that date, and if he had taken action, he lacked authority to fix a rent with retroactive effect since it had not been registered in his office. Nor was it a case, as we

said before, of automatic adjustment nor one in which a temporary order fixing the rental exists, situations which would have justified the fixing of a rent with retroactive effect. It was as of June 19, 1964, and by provision of § 6(j)(1), that the Administrator was empowered to fix a lower rent with retroactive effect in the cases where the owner would not comply with the requirement of registration required by law. But in the instant case, his power to do so coincided with the effectiveness of the exempting provision so that his subsequent action fixing a lower rent with retroactive effect was contrary to law.

Therefore, the judgment rendered in this case by the Superior Court, San Juan Part, on October 27, 1966 will be reversed and said court will be ordered to remand the case to the Administrator of Economic Stabilization to proceed in a manner consistent with this opinion.