GOTTSCHALK, Appellent v. HEGG et al., Respondents

(228 N.W.2d 640)

(File No. 11301. Opinion filed May 2, 1975)

Lewayne M. Erickson, Brookings, for plaintiff and appellant.

David O. Carter and Galen Vaa, Asst. Attys. Gen., Pierre, for defendants and respondents; Kermit A. Sande, Atty. Gen., on the brief.

DUNN, Chief Justice.

In December 1970, an employee of the South Dakota Real Estate Commission made a routine audit of the Gottschalk Company, Inc., a licensed real estate firm operated by plaintiff Oliver Gottschalk. As a result of the auditor's report, on January 6, 1971, the Commission served plaintiff, a licensed real estate broker, with a notice of hearing in order to investigate certain irregularities in the handling of trust monies. On May 6, 1971, the Commission found that plaintiff had engaged in unprofessional conduct and determined that he be suspended as a real estate broker for six months from that date. The Commission also suspended the license issued to the Gottschalk Company, Inc., for six months.

The present controversy stems from a notice of hearing served on plaintiff by the Commission in January 1972. This proposed hearing, scheduled for February 3, 1972, would have dealt with plaintiff's alleged unprofessional conduct in his handling of certain "Nelson-Severson" transactions on or about August 15, 1969. This hearing was never held.

Plaintiff filed a complaint on February 1, 1972, in which he prayed for a declaratory judgment, a permanent injunction enjoining the Commission from proceeding on matters which could have been or should have been determined in the prior proceeding and an order staying the pending hearing. Plaintiff obtained a temporary restraining order which continues in effect pending this appeal. In response to a motion to dismiss filed by defendants on March 1, 1972, a hearing was held soon thereafter, and the circuit court subsequently decided to dismiss the action. The trial court reasoned thusly:

> "I must prospectively presume the regularity of the acts of a duly empowered administrative board as well as of its members. I believe this to be corollary to the proposition that judicial interference with the administrative process ought to be withheld except where ills cannot otherwise be remedied. In this light, I cannot support plaintiff's cause, which can more adequately and properly be raised on judicial review, following an administrative hearing."

, Plaintiff appeals from the order of dismissal and essentially raises·these· issues: .

    . (1) Was plaintiff entitled to a declaratory judgment setting forth the rights, status and other legal relations of the, plaintiff and defendants with regard to the rules and regulations of the Commission and the South Dakota Administrative Procedures Act?

    (2) Will the plaintiff be denied due process of law if the Commission is not prevented from proceeding further against him?

    (3) Should the present action be heard in order to determine if the prior administrative hearing is res judicata as to the "Nelson-Severson" transactions?

Initially, it should be noted that the South Dakota Real Estate Commission is empowered under SDCL 36-21-42 to revoke a license upon proof of unprofessional conduct on the part of the holder. SDCL 36-21-43 requires that revocation proceedings must comply with the administrative procedures established by SDCL 1-26. Plaintiff asked the circuit court and now asks this court to interfere with the administrative process. We decline to do so, and affirm the trial court's similar refusal.

■ We hold that plaintiff is not now entitled to judicial resolution of his case and rest this decision on fundamental application of the related doctrines known as exhaustion of remedies, primary jurisdiction and ripeness. Drawn into question in this case is our recent decision in Mordhorst v. Egert, 1974, 88 S.D. 527, 223 N.W.2d 501. In Mordhorst we held that administrative remedies before the South Dakota State Board of Examiners in Optometry need not have been exhausted prior to judicial resolution of that controversy. That case does not signal an end to the administrative exhaustion doctrine in our state, nor is the factual situation before us drawn within its ambit.

■ As Mordhorst noted, exhaustion of remedies is broadly stated as the withholding· of judicial relief on· a claim or, dispute cognizable by an administrative body until the administrative process has run its course. Myers v. Bethlehem Shipbuilding

Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and Grosz v. Conser, 1951, 73 S.D. 553, 45 N.W.2d 734. The exhaustion principle divides largely into two doctrines, (1) exhaustion of administrative remedies and (2) primary jurisdiction. The distinction has been explained in this manner:

> " 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." United States v. Western P. R. Co., 352 U.S. 59, 63-64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132.

As was the case in Mordhorst, both doctrines are involved here—primary jurisdiction because plaintiff raises both administrative issue dealing with unprofessional conduct and constitutional issues, and exhaustion of remedies because of the significant action already undertaken by the Commission. It should be stated that the subject matter jurisdiction of the circuit court is not doubted; rather, the question is one of priority or timing of judicial review. Apgar Travel Agency v. International Air Trans. Ass'n, 1952, S.D.N.Y., 107 F.Supp. 706; Davis, Administrative Law Treatise, § 20.01.

Where the legislature has created an administrative body empowered to deal with issues within its expertise, it is apparent that the courts must seek to harmonize their relations with these agencies. The exhaustion principle is the very cornerstone of that harmony. In the recent case of Delzer Construction Co. v. United States, 1973, 8 Cir., 487 F.2d 908, the Eighth Circuit Court of Appeals said:

> "The doctrine of exhaustion of administrative remedies holds an important position in our scheme of laws,

allowing the agency an opportunity to exercise its discretion, apply its expertise, or, relevantly here, make a factual record upon which to base subsequent judicial review. (citations omitted) Appellees claim that their livelihood is being stripped from them in violation of their due process rights, yet they have not carried through to the hearing stage which is theirs by right; nor, despite their complaint of expense and inconvenience, have they attempted to have the location of the hearing moved to South Dakota." 487 F.2d at 909.

■ Because the present controversy may well be resolved by the administrative body and considering our preference for use of the appropriate statutory machinery, it was encumbent upon the plaintiff to present an extraordinary factual situation justifying judicial interference. Such a factual situation existed in Mordhorst v. Egert, supra, while here it does not.

In Mordhorst, plaintiff claimed a due process violation in that the Board of Examiners in Optometry did not constitute a fair and impartial tribunal. Plaintiff specifically contended that "the Board's bias and its inaction render it incompetent to act." Our decision to uphold the trial court's refusal to apply the exhaustion principle hinged on these facts: (1) the Board, on June 21, 1971, set hearings on charges of unprofessional conduct against four optometrists for December 6, 1971. The hearings were never held or rescheduled, and (2) the complainant admitted that he had no personal knowledge of the specific charges and had made no effort to verify the complaints. He further admitted that he executed the instruments at the request of those attending a meeting of the directors of the South Dakota Optometric Association. Furthermore:

"This meeting included officers of the Association and members of the South Dakota State Board of Examiners in Optometry. It was [the complainant's] testimony that the guilt of the accused optometrists was agreed upon by those present before the complaints were offered for signing. It must be noted that the complaints had been prepared by the attorney who served as counsel for both the Association and the Board." 223 N.W.2d 501, 505.

■ Faced with such an apparent breach of fundamental fairness as the predetermination of guilt and the combination of prosecutorial and judicial functions, there was no reason to require an exhaustion of administrative remedies. We do not find similar facts in the sparse record now before us. The presence of a constitutional question is not sufficient in itself to defeat the exhaustion principle. Public Utilities Com. v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470, rehearing den. 356 U.S. 925, 78 S.Ct. 713, 2 L.Ed.2d 760; 2 Am.Jur.2d, Administrative Law, § 603.

Perhaps more important is the absence of delay on the part of the administrative body. Plaintiff filed this action within one month of notification of hearing and two days prior to the date set for the hearing. We cannot ignore the fact that one of the reasons for creation of administrative agencies is the speedy resolution of issues within their expertise. Furthermore, lengthy judicial involvement may ultimately prove to be completely unnecessary as the present controversy may be disposed of at the administrative level. Beard of Stahr, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321; Aircraft & D. Equip. Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796; Delzer Construction Co. v. United States, supra. Following this line of reasoning, it is apparent that issues raised by the plaintiff, such as the res judicata question, best await judicial review, if needed, rather than warranting initial judicial interference.

The related doctrine of "ripeness" may also be considered in this case. Professor Davis notes that while both ripeness and exhaustion deal with the timing of judicial review, the former focuses on the nature of the judicial process, i. e., the types of functions that courts should perform.

"The basic principle of ripeness is easy to state: Judicial machinery should be conserved for problems which are real and present or imminent, not squandered on problems which are abstract or hypothetical or remote." Davis, Administrative Law Treatise, § 21.01.

Certain questions advanced by the plaintiff fail to satisfy the ripeness requirement. For example, plaintiff claims that he was

denied the right to confront his accuser although the first administrative hearing was yet to be held. He also attacks the South Dakota Administrative Procedures Act at random. Certainly these claims lack the concreteness properly prerequisite to judicial resolution.

We conclude that plaintiff is not now entitled to judicial relief and that the trial court did not err by its order of dismissal.

Affirmed.

All the Justices concur.